IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARA ARVIZO,

    Plaintiff,

v.                                                                                                                                       No. 12-cv-0981 SMV

CAROLYN COLVIN,[1]
Acting Comm'r of SSA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 16] ("Motion"), filed on March 25, 2013. The Commissioner responded on May 24, 2013. [Doc. 17]. Plaintiff replied on June 14, 2013. [Doc. 18]. On December 12, 2012, the Clerk of Court noted that the parties had consented to the undersigned's entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in evaluating the opinions of two medical sources. Therefore, the Motion will be granted to the extent that Plaintiff requests remand. *See* 42 U.S.C. § 405(g) (sentence four).

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security and will, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action. *See* Fed. R. Civ. P. 25(d)(1) (permitting such substitutions).

## I.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity;" *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.  Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on August 6, 2007. Tr. 17. Plaintiff alleged a disability onset date of June 2, 2007. *Id.* Her claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Sean Teehan held a hearing on November 30, 2009, in Albuquerque, New Mexico. Tr. 17, 31–72. Plaintiff and her non-attorney representative, Micki Kindley, appeared in person. Tr. 17, 33. The ALJ took testimony from Plaintiff and an impartial vocational expert ("VE"), Diane Weber, who also appeared in person. Tr. 17, 61−71.

The ALJ issued his unfavorable decision on December 21, 2009. Tr. 17–26. At step one, he found that Plaintiff had not engaged in substantial, gainful activity since June 2, 2007, the alleged onset date. Tr. 19. Next, at step two, he found that Plaintiff suffered from the following severe impairments: "status-post right above the knee amputation with prosthesis," left knee osteoarthritis, and degenerative disc disease of the lumbar spine. *Id.* The ALJ also acknowledged that Plaintiff claimed to have mental impairments. Tr. 21. However, he found that "the evidence [was] insufficient to show [her] alleged mental impairment [was] severe or that it would meet the duration requirements of the [Social Security Act]."[4] *Id.* At step three,

---

[4] It is not clear whether the ALJ found that Plaintiff had any medically determinable mental impairment in the first place. *See* Tr. 20–21. To be sure, the ALJ did find that Plaintiff had no *severe* mental impairment, but it is not clear whether he found that she had no mental impairment at all. *See id.* On the one hand, the ALJ explained that a

4

the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 21–22.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 22–25.

> [Plaintiff has] the [RFC] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she is only able to: sit for 1 hour at a time for a total of 6 hours in a workday; stand and walk for 30 minutes each at one time for a total of 2 hours out of an 8 hour workday; and requires a sit/stand option every hour for 5 to 10 minutes. She is never able to climb ropes, ladders, scaffolds, kneel, or crawl, but can occasionally climb ramps and stairs, balance, stoop, and crouch. She is able to occasionally push/pull with the left lower extremity but never push/pull with the right lower extremity. She must also avoid concentrated exposure to heights and moving/dangerous machinery.

Tr. 22.

At step four, the ALJ found that Plaintiff was not able to perform any of her past relevant work. Tr. 25. Accordingly, he proceeded to step five, where he relied on testimony by the VE to find that, based on Plaintiff's age, education, work experience, and RFC, she was

---

> statement of symptoms alone is not sufficient to establish that there is a physical or mental impairment. The statement of symptoms must be accompanied by signs and laboratory findings. Although [Plaintiff] has made statements regarding specific mental symptoms . . ., the record does not contain sufficient evidence establishing a medically determinable impairment that would interfere with [Plaintiff's] ability to perform basic work activities and/or will last for 12 months.

Tr. 21; *see* 20 C.F.R. §§ 404.1508, 404.1528, 416.908, 416.928 (explaining what is needed to show a medically determinable impairment). By itself, this analysis tends to indicate that the ALJ found that Plaintiff had no medically determinable mental impairment at all. On the other hand, though, the ALJ completed analyses on Plaintiff's mental impairments that would not have been necessary if she had no mental impairment. For example, the ALJ analyzed certain areas of Plaintiff's functioning. Tr. at 19–21. Later, he evaluated the credibility of her reported mental health symptoms. Tr. 22–24. So, it appears that he found that she had medically determinable mental impairments; they just were not severe. In any event, Plaintiff makes no argument on the issue. *See* [Docs. 16, 18].

capable of performing other jobs that exist in significant numbers in the national economy. Tr. 25–26.

Ultimately, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act, and he denied the claims. Tr. 26. The Appeals Council denied Plaintiff's request for review on July 24, 2012. Tr. 1−5. Plaintiff timely filed the instant action on September 19, 2012. [Doc. 1].[5]

### IV.  Analysis

The Motion will be granted, and the case will be remanded to the Commissioner for consideration of the February 7, 2006 opinions of J. LeRoy Gabaldon, Ph.D., and Charles Mellon, M.D. Plaintiff's other claims are without merit.

#### A.  Mental Impairments

Plaintiff argues that the ALJ erred in failing to discuss the February 7, 2006 opinions of Dr. Gabaldon and Dr. Mellon. [Doc. 16] at 16–17. Plaintiff correctly points out that the ALJ is required to "evaluate every medical opinion in the record." *Id.* at 16 (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2008)). The Commissioner's explanations as to why the ALJ did not need to consider Dr. Gabaldon's 2006 opinion were not offered by the ALJ himself. *Compare* [Doc. 17] at 5–7, *with* Tr. 17–26. Therefore, they constitute post-hoc rationalizations that this Court may not consider. *See, e.g., Robinson v. Barnhart*, 366 F.3d 1078, 1084

---

[5] Plaintiff reports that she filed a second application for benefits that was approved on December 6, 2012. [Doc. 16] at 24. The ALJ deciding the second application found that Plaintiff was disabled beginning on December 22, 2009, [Doc. 16-1] at 10, the day after ALJ Teehan issued the first, unfavorable decision, Tr. 26. It is ALJ Teehan's first, unfavorable decision that is at issue in this case. The Commissioner argues that the second, favorable decision is irrelevant to this case because it adjudicates a different time period, namely December 22, 2009 through December 6, 2012, whereas the instant case only addresses June 2, 2007 through December 21, 2009. [Doc. 17] at 16.

(10th Cir. 2004) (Reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision" and may not "supply[] possible reasons" for an ALJ's decision after the fact.). The case should be remanded for proper evaluation of Dr. Gabaldon's and Dr. Mellon's 2006 opinions.[6] However, Plaintiff's other arguments for remand are without merit.

First, Plaintiff argues that the ALJ erred in failing to find limitations corresponding to Plaintiff's non-severe mental impairments. [Doc. 16] at 16. However, the ALJ did consider and discuss Plaintiff's non-severe mental impairments in his RFC analysis. Tr. 22–23. He made specific credibility findings, which included findings on the effects of her mental impairments. *Id.* Therefore, remand is not warranted on this issue. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (requiring *consideration* of all medically determinable impairments, regardless of whether "severe" or not, in assessing the RFC).

Second, Plaintiff also argues that the ALJ erred in failing to "include [Dr. Mellon's] limitations in the RFC finding." [Doc. 16] at 17. The Court will not go as far as Plaintiff urges. Although the ALJ was required to address Dr. Mellon's opinion, the Court may not reweigh the evidence. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118. Therefore, the Court declines to decide what limitations should have been included in the RFC. Determining the precise

---

[6] Later in her Motion, Plaintiff argues that ALJ's analysis of certain areas of functioning—referred to as the "B-criteria" because they are contained in paragraph B of many Listings related to mental disorders, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.01–12.10—is flawed because the ALJ ignored Dr. Gabaldon's and Dr. Mellon's opinions, and because the ALJ also ignored some of Plaintiff's reported symptoms. [Doc. 16] at 18. The Commissioner responds that the B-criteria analysis is supported by substantial evidence. [Doc. 17] at 7–8. The Court need not reach this issue. Considering that the case will be remanded for proper consideration of Dr. Gabaldon's and Dr. Mellon's opinions, the B-criteria analysis will necessarily be revisited on remand.

contours of the RFC is properly left to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Third, Plaintiff argues that the ALJ should not have relied on Plaintiff's lack of mental health treatment between February of 2009 and the date of the decision to find that she had no mental-health-related limitations in her RFC. [Doc. 16] at 17–18 (citing Tr. 20 (ALJ's findings) and citing *Grotendorst v. Astrue*, No. 09-2132, 370 F. App'x 879, 883 (10th Cir. Mar. 22, 2010) (unpublished) (ALJ erred in failing to apply the "special technique," outlined at 20 C.F.R. § 404.1520a, but instead relied on lack of treatment to find that claimant had no severe mental impairment at step two)). The Court is not persuaded because, although the ALJ mentioned this lack of treatment, he did not appear to rely on it at step two. *See* Tr. 19–21. Moreover, treatment compliance is a legitimate consideration in evaluating the validity of an alleged impairment. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). In this case, the ALJ followed the required step-two analysis, and there is no error. *Compare* § 404.1520a (required analysis), *with* Tr. 19–21 (applying required analysis).

Fourth, Plaintiff argues that the ALJ impermissibly ignored certain evidence described in her Motion, including statements by her boyfriend and grandmother. [Doc. 16] at 18–19 (citing *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006)). Plaintiff argues that under *Blea*, the ALJ "must make clear whether [he] considered lay testimony." [Doc. 16] at 18. Plaintiff's argument is not persuasive because she misperceives *Blea*. "[A]n ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted); *see Blea*, 466 F.3d at 915 (quoting and applying *Clifton* in the context of *uncontroverted* lay testimony). Here, Plaintiff does not argue that the allegedly ignored evidence is uncontroverted. *See* [Doc. 16] at 18–19. Thus, neither *Blea* nor *Clifton* controls. Plaintiff has failed to meet her burden to show that the ALJ impermissibly ignored the evidence.

Finally, the Court is not persuaded that the ALJ's credibility analysis is impermissibly flawed. Plaintiff argues that the credibility analysis "is contrary to the substantial evidence discussed [in her Motion]." [Doc. 16] at 18. However, Plaintiff misperceives the standard of review. The question for this Court is not whether substantial evidence could have supported a different finding; the question is whether substantial evidence supports the findings reached. *See Lax v. Astrue*, 489 F.3d at 1084. Here, Plaintiff does not even argue—much less show— that the ALJ's findings are not supported by substantial evidence. [Doc. 16] at 18–19. Accordingly, remand is not warranted on the ALJ's credibility analysis.

### B.  RFC's Sit and Stand Limitations.

Plaintiff argues that "the ALJ omitted a critical part of the RFC when providing the VE with [Plaintiff's] limitations." [Doc. 16] at 19. Plaintiff is incorrect. The hypothetical provided to the VE related with precision to all of the limitations in the RFC. *Compare* Tr. 22 (RFC), *with* Tr. 66–67 (hypothetical to VE).

To the extent that Plaintiff argues that the ALJ should have assessed different RFC limitations for her ability to sit and to stand, the argument fails. Plaintiff offers two reasons

why the one-hour RFC limit on her ability to sit was error. First, she explains that she testified that she could only sit for about 30 minutes without changing positions. [Doc. 16] at 19 (citing Tr. 41–42, 55, 183, 234). Second, she explains that Dr. Vigil "noted that [Plaintiff] could sit without shifting for only 20 minutes." [Doc. 16] at 19 (citing Tr. 330).

Plaintiff offers no reason at all why the 30-minute standing limitation assessed in the RFC is error, other than citing to portions of the record without further explanation. [Doc. 16] at 20 (citing Tr. 22, 331, 386–87, 431, 441–42.). Some of the records that she cites address her ability to stand, Tr. 331, 386–87, 431, but others do not, Tr. 441–42. Importantly, however, Plaintiff has failed to show that the ALJ's findings regarding her ability to sit and stand are not supported by substantial evidence. It does little to cite to evidence that could support an alternative finding, as she has done, because this Court may not reweigh the evidence. *See Flaherty*, 515 F.3d at 1070.

In her Reply, Plaintiff argues that the ALJ ignored evidence that was favorable to her. [Doc. 18] at 3–4. She also argues that the omitted evidence should have been given greater weight than the evidence relied on by the ALJ because it came from examining sources, whereas the evidence cited by the ALJ came from a non-examining source, Gerhard Nyase, M.D. *Id.* It is Plaintiff's burden to show that the ALJ's finding lacked substantial evidentiary support. By merely citing to evidence that could support a different finding, Plaintiff has failed to meet that burden.

C. RFC's Lift Restriction

Plaintiff argues that the "ALJ omitted a critical part of the RFC when providing the VE with [Plaintiff's] limitations. [Plaintiff] cannot lift above waist level." [Doc. 16] at 20. Of course, the ALJ never made such a finding. *See* Tr. 17–26. It is not part of the RFC. Tr. 22. Therefore, the ALJ did not err in omitting it from the hypothetical presented to the VE.

Plaintiff also seems to argue that her RFC should have limited her to lifting no more than ten pounds presumably because Dr. Vigil noted a "moderate functional disability" in lifting and carrying. [Doc. 16] at 20–21 (citing Tr. 331). The Commissioner responds that the ALJ's RFC is supported by substantial evidence and that the Court cannot reweigh the evidence. [Doc. 17] at 10–11. Plaintiff replies (incorrectly) that the Commissioner failed to respond to her argument. [Doc. 18] at 4. The Court is not persuaded by Plaintiff's argument that the ALJ's erred. Again, Plaintiff simply cites evidence that she believes supports her preferred finding, which is not the standard. Plaintiff has not argued that the ALJ's findings lack substantial evidentiary support, and thus, she has failed to meet her burden to show that remand is warranted on this issue. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.").

D. Transferability of Skills

The Court has spent a great deal of time considering the briefing on this issue and the cases cited by both sides. Ultimately, the Court is not persuaded by the authority cited by

Plaintiff.  Thus, she fails to meet her burden to show that the ALJ's lack of finding on transferability of skills was error.  Remand is not appropriate.

Plaintiff argues that the ALJ erred in relying on the VE's testimony because the ALJ did not also find that Plaintiff had transferrable skills.  [Doc. 16] at 21–22.  The VE testified that Plaintiff could perform only semi-skilled work.  *Id.* at 21 (citing Tr. 26, 64–65).  However, the ALJ found that transferability of job skills was "not material to the determination of disability . . . ."  *Id.* (quoting Tr. 25).  Plaintiff concludes that the VE's testimony (that Plaintiff can perform semi-skilled work) is "blatantly inconsistent with the ALJ's finding that the issue of transferrable skills is not material."  *Id.* at 22.  Essentially, Plaintiff argues that the ALJ erred in failing to find that she had transferable skills.  However, none of the authority she cites supports her position.

Plaintiff cites a number of cases, regulations, and Social Security Rulings that are not on point.  [Doc. 16] at 21–22 (citing SSR 82-41; 20 C.F.R. §§ 404.1568(a), 416.968(a); *Dikeman v. Halter*, 245 F.3d 1182, 1187 (10th Cir. 2001); SSR 00-4p; *Ware v. Barnhart*, No. 04-6095, 123 F. App'x 335 (10th Cir. Feb. 10, 2005) (unpublished)).  For example, the ALJs in both *Dikeman* and *Ware* expressly found that the claimants had transferrable skills.  *Dikeman*, 245 F.3d at 1184 ("The ALJ found that plaintiff acquired skills in her past work as a checker that were transferrable to other semi-skilled cashiering jobs within her RFC."); *Ware*, 123 F. App'x at 338 ("The ALJ found that: 'based on the testimony of the [VE, plaintiff] has transferrable skills from semi-skilled work previously performed.'").  The Tenth Circuit found in both of these cases that the ALJs had failed to adequately support their findings of transferrable skills.

12

*Dikeman*, 245 F.3d at 1187–88 *Ware*, 123 F. App'x at 337–38. Here, however, the ALJ did not make a finding either way regarding Plaintiff's transferrable skills. Tr. 25. Plaintiff cites no authority indicating that the ALJ was required to make a finding on her transferability of skills in the first place. Because Plaintiff has failed to meet her burden before this Court to show that the ALJ erred, remand on this issue is not warranted.

### E. Credibility Finding

Plaintiff challenges the ALJ's credibility findings because, she argues, the ALJ failed to apply the correct legal standards. [Doc. 16] at 22–24 (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). Plaintiff also complains that the ALJ impermissibly "required [Plaintiff] to show that the amount of pain she suffers is consistent with the objective findings." *Id.* at 23 (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). The Commissioner responds that the ALJ spent several pages discussing several factors related to credibility, such as Plaintiff's activities of daily living and treatment history. [Doc. 17] at 14–16. The Commissioner is correct. The credibility analysis is sufficient, and remand is not appropriate.

In evaluating the credibility of a claimant's subjective complaints, the ALJ follows the steps outlined in *Luna*, 834 F.2d at 163. First, accepting the subjective allegations as true, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the alleged [symptoms]." *Luna*, 834 F.2d at 163 (emphasis in original); *see* SSR 96-7p, 1996 WL 374186, at *2. "If an appropriate nexus does exist," the ALJ must next consider all of the relevant evidence "to determine whether the claimant's [symptoms are] in fact disabling." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186,

at *2. The ALJ must consider "the medical data previously presented, any other objective indications of the degree of [the symptoms], and subjective accounts of the severity" in determining whether the ALJ believes the claimant. *Luna*, 834 F.2d at 163. That is, the ALJ must assess the credibility of the claimant's assertions of pain. *Id.* ALJs, however do not have to discuss "every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). "[F]indings with respect to a claimant's credibility 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Hardman*, 362 F.3d at 678–79 (quoting *Kepler*, 68 F.3d at 391). To be sure, an ALJ is required to do more than "simply recite[ ] the general factors he considered . . . [without] refer[ring] to any specific evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). But "our opinion in *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Id.*

With respect to the credibility analysis in this case, the Commissioner is correct. Although the ALJ failed to make express findings on whether Plaintiff has a medically determinable impairment that could reasonably be expected to produce the symptoms she alleged, the ALJ did make findings on how credible he found her and why. *See* Tr. 22–24. The ALJ explained that he found Plaintiff to be only partially credible because: (1) she "failed to establish a correlation between her [reported symptoms] and the objective medical evidence[;]"

14

(2) no treating source had substantiated her claim for benefits; (3) Plaintiff "remains able to perform household chores, care for her children, maintain a residence, drive an automobile, and attend appointments as required;" (4) she did not exhibit any "overt behaviors" during the hearing; and (5) she has not been truthful with her treating sources regarding her substance abuse. Tr. 23. The Court finds that the ALJ's credibility analysis passes muster under *Luna*. Moreover, because the ALJ did not rely on *solely* on a lack of objective medical evidence, his findings do not conflict with *Hardman*. *See Hardman*, 362 F.3d at 681 (remanding where credibility analysis rested entirely on lack of objective medical support). For these reasons, remand is not warranted on this basis.

F. New and Material Evidence

Plaintiff submits a copy of her approval letter from the Commissioner for the time period immediately following the ALJ's decision in this case. [Doc. 16-1] at 1–10. Plaintiff suggests that the award letter constitutes new and material evidence that she is disabled. [Doc. 16] at 24. She cites some authority but otherwise does not develop this argument. *Id.* (citing *Hayes v. Astrue*, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) (subsequent award constituted new and material evidence); *Reichard v. Barnhart*, 285 F. Supp. 2d 728, 734 (S.D.W. Va. 2003) (same); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2000) (subsequent award did *not* constitute new and material evidence); *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (same)).[7] The Commissioner disagrees because, she argues, the

---

[7] Plaintiff also cited to "*Barrientoz v. Massanari*, 463 F. Supp. 2d 577, 585–88 (W.D. Texas 2002)." [Doc. 16] at 24. However, this citation appears to conflate two separate cases: *Bradley v. Barnhart*, 463 F. Supp. 2d 577 (S.D.W. Va. 2006) and *Barrientoz v. Massanari*, 202 F. Supp. 2d 577 (W.D. Texas 2002). Unfortunately, both cases address a new-and-material-evidence issue. *Compare Bradley*, 463 F. Supp 2d at 583 (remanding for

award letter does not relate to the time period at issue here. [Doc. 17] at 16. Plaintiff replies that the award letter's temporal proximity makes it relevant. [Doc. 18] at 8.

The Court has thoroughly reviewed the cases cited by both sides as well as the briefing (such as it is) on the matter. Plaintiff falls far short of developing this argument. The Court, therefore, rejects it. *See, e.g., United States v. De Vaughn*, 694 F.3d 1141, 1155 n.9 (10th Cir. 2012) ("The court will not consider issue[s] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (internal quotation marks omitted); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("[Plaintiff] presents a number of subissues and arguments, many of them poorly developed. [The court] will consider and discuss only those of her contentions that have been adequately briefed for . . . review.")).

## V.     Conclusion

Remand is necessary for proper consideration of Dr. Gabaldon's and Dr. Mellon's 2006 opinions.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 16] is **GRANTED** to the extent that she requests remand.

---

consideration of subsequent award), *with Barrientoz*, 202 F. Supp. 2d (remanding because, *inter alia*, the Commissioner failed to follow its own rules regarding consideration of evidence underlying a subsequent award of benefits). The Court will not guess which case Plaintiff intended to cite.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**